WELMAN,<br/>CURATOR,<br/><i>vs.</i><br/>CONNOLY.

MOTION DENIED.

————·❀·————

<i>WEEKS,</i> vs. <i>TRASK.</i>

THE defendant had been held to bail upon the usual affidavit.

A RULE was now obtained to shew cause, why the proceedings in this cause should not be stayed, until the plaintiff, who resided out of the first superior court district, should give security for the costs, in case a verdict was rendered against him, or he was nonsuited.

If the plain-<br/>tiff reside in<br/>the territory,<br/>tho'out of the<br/>district, in<br/>which the<br/>suit is bro't,<br/>the court will<br/>not stay pro-<br/>ceedings, till<br/>he give secu-<br/>rity for the<br/>costs.

*Ellery*, in support of the rule. This case would admit of no doubt, if the plaintiff resided out of the territory. In the courts of Common Pleas, and of King's Bench, in England, whenever the plaintiff is shewn to reside abroad, this order is always granted. 1 *T. Rep.* 267. 1 *East Rep.* 431. 2 *Hen. Black.* 384. 2 *Vesey*, 471. The reason of it is evident, inasmuch as the plaintiff would

not be within reach of the court, so as to have process served upon him for the costs. The same reason applies to the present plaintiff, who though an inhabitant of this territory, resides out of the district where the suit was instituted. By the act supplementary to an act, entitled, *an act providing for the superior court going circuit*, 1807, *ch.* 1, this territory is divided into five superior court districts, where the courts are respectively to be held; and these courts, though composed of the same judges, cannot be considered the same courts. Each has its separate clerk, and sheriff, to make out, certify and serve its processes. There is no intercommunity of jurisdiction. No process from one court can issue, except certified by its own clerk; or be executed, except by its own sheriff. In the present case, for instance, should the plaintiff fail in his suit, can a *fi fa*, for the costs, be executed by the sheriff, out of this district? Would it not be necessary to commence a new suit, and obtain process in the district where the plaintiff resides? In an English court, a plaintiff in Ireland is considered so far abroad, as to oblige him to give security for costs, and for the reason here urged; because the process of the court would not reach him, in case an execution issued for the costs. 1 *T. Rep.* 362, *Fitzgerald* vs. *Whitmore.* And if the process of the court will not reach a plaintiff, residing in a different district,

ought we not to be entitled to the benefit of the
same rule?

*Hennen*, contra. The application of the defen-
dant is founded on a rule of the court, requiring
non-residents of the state, to give security for
costs.    This rule cannot be extended to residents
of the state, though residing out of the district.
" It was held by the court of King's Bench in a
" variety of cases, and those of no very ancient
" date, that a plaintiff's residence abroad, or in
" Scotland, was not a sufficient ground for staying
" the proceedings in the suit, 'till security was
" given for the costs, because such a practice it
" was said, might operate as a discouragement of
" trade and commerce, would be clogging the
" course of justice, and in a great measure pre-
" clude foreigners from suing in our courts, as in
" a strange country they might, frequently, be
" unable to find security." 2 *Str.* 1206. 1 *Wils.*
266. 2 *Burr.* 1026, 4 *Burr.* 2105. *Cowp.* 158.
*Hullock's law of costs*, 442.

Of late years this rule has been changed, as is
proved by the authority in 1 *T. R.* 267 & 491.
Nor is it the uniform rule of the court of Com-
mon Pleas. 1 *H. B.* 196.   The practice of the
court of Exchequer has always been uniform : no
precedent, of such security having been required,
is to be found in that court, *Anstr.* 359, *Beckman*

H h

Spring 1812.
I. District.

Weeks
vs.
Trask.

vs. *Legrange.* 7 *Bac. Abrid.* 422.    The rule it-self, then, of requiring security for costs, is founded, I think, on questionable grounds; but to extend it so far as to say, that inhabitants of the same state should be bound to conform to it, would be highly oppressive to the poor, and a great hindrance to justice : a planter, for instance, in the city of New-Orleans, from Washita, might find it difficult to obtain security for costs, in a suit which he might wish to bring against an inhabitant of the city.   It would also be extending the rule beyond the spirit of the English decisions —a judgment against the plaintiff for costs, would always be a matter of record, on which the defendant might obtain an order of seizure from the court of the parish, or the superior court of the district, in which the plaintiff might reside.

*Ellery*, in reply.    There is no doubt but in England, both in the courts of King's Bench and of Common Pleas, that security for costs was not always required, when the plaintiff was a foreigner or resided abroad ; but, of late years, the practice in that respect, in both courts, has been changed ; and now, not only foreigners and plaintiffs residing abroad, in both courts are obliged to furnish this security, but in the court of King's Bench, this rule has been extended to a plaintiff residing in Ireland, who was *quoad hoc* considered as a fo-

reigner. When this was so decided, in the case of *Fitzgerald* vs. *Whitmore*, it was then, as now urged, that such an extension of the rule was impolitic ; but the court decided that the same reason which induced it to lay down the rule with respect to foreigners, namely, that the process of the court could not reach them, in case an execution issued for costs, held equally with respect to Irishmen. And this same answer can now be given to the same objection, raised in the present case ; that a plaintiff residing out of the district, is *quoad hoc* a foreigner, whom the process of this court cannot reach. And if the rules and decisions of the courts in England are resorted to, should we not rather be influenced by their latest decisions and improved rules, than by obsolete cases and exploded practice !

The argument *ab inconvenienti* has not much force. In the case supposed, the Wachita planter must have very little confidence in the goodness of his cause, or be very much limited in his funds or credit, if he should find a serious difficulty either to deposit the requisite sum, or furnish the necessary security for the payments of costs, should he be cast in the suit. On the other hand, the defendant, in this event, would be put to serious inconvenience in their recovery. He has, indeed, the remedy pointed out, though a circuitous one, that of an order of seizure ; but this implies

SPRING 1812. a new suit to be instituted by him in the district
I. District. where the plaintiff resides.   But is not this, in
WEEKS   effect, making two suits out of one, and before
*vs.*   different tribunals?   Again, where the act directs
TRASK. that defendants shall only be sued in the district
where they reside, was it not intended that the
whole suit should be there decided?   Was it
supposed, that a branch of it was to extend to the
district of the plaintiff, and to be carried before the
tribunal in that quarter?   Certainly, much less
inconvenience will result from the adoption, than
the rejection of this rule.

*By the Court*, LEWIS, *J.* alone.   The security
which the court requires of foreign plaintiffs, is the
*cautio judicatum solvi* of the civil law, which is
required from *foreigners* only.   The principles
cited by the defendant's counsel, are not recogni-
sed in the United States.   In them, like in this,
there are a number of courts, limited in their
jurisdiction to a small extent of country; and it
could not be endured that every plaintiff suing out
of his parish or district, should have his suit stop-
ped, till he came and gave security for the costs.

RULE DISCHARGED.